IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LIONEL DION WILLIAMS, # 333-335 | * | |
| Petitioner | * | |
| v. | * | Civil Action No. DKC-08-410 |
| | * | |
| D. KEN HORNING, et al. | * | |
| Respondents | * | |
| | *** | |

## MEMORANDUM OPINION

Before the court is Lionel Dion Williams' ("Williams") pro se Motion for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Williams, an inmate at the Roxbury Correctional Institution, challenges his conviction and sentence in the Circuit Court for Charles County for possession of cocaine with intent to distribute. Respondents[1] have filed a response in opposition to which Petitioner has replied. Upon careful review of the pleadings, exhibits, transcripts, and applicable law, the court determines an evidentiary hearing is unnecessary, and the Petition shall be denied by separate Order.

## FACTUAL BACKGROUND

Following a trial on August 8-9, 2005, a jury sitting in the Circuit Court for Charles County convicted Williams of cocaine possession with intent to distribute. On January 19, 2006, Williams was sentenced to twenty-five years incarceration without parole. The Court of Special Appeals of Maryland summarized the facts as follows:

> Around 5:00 p.m. on February 18, 2005, Officer Anthony Celia of the Charles County Sheriff's Office was traveling southbound on Leonardtown Road in Waldorf, when he observed a green Buick traveling northbound with Maryland

---

[1] Williams is presently confined at the Roxbury Correctional Institution. Gregg Hershberger, Warden of the Roxbury Correctional Institution and Williams' current custodian, shall be substituted in lieu of D. Ken Horning as a respondent. *See* Rule 2(a), 28 U.S.C. fol. § 2254; Fed. R. Civ. P. 25(d)(1).

plates but no front tag. The officer made a U-turn, activated his emergency lights, and pulled up behind the Buick. The Buick then stopped about ten feet from the intersection of Leonardtown Road and Route 488; the light was green.

The Officer stopped his car behind the Buick, exited his car, and walked up to the Buick. The appellant, the sole occupant, was sitting in the driver's seat. The officer asked him what was wrong, and the appellant replied, "Nothing." The officer asked him why he was sitting at the green light, and appellant argued that the light was not green. The officer smelled the odor of burnt marijuana coming from the car. He asked the appellant for his license and registration. The appellant replied that he did not have them with him. As the officer reached for his notepad, the appellant hit the gas pedal and turned onto Route 488. The officer ran back to his car, activated his siren, and drove after him.

During the ensuing seven-mile car chase, the appellant reached speeds of 90 mph in a 50 mph zone and passed several cars by either driving on the shoulder or crossing the double yellow line. Officer Celia alerted Officer Robert Bagley of the La Plata Police Department of the situation, and Officer Bagley placed "stop sticks" on the road ahead of the appellant. The appellant's car struck the stop sticks and crashed into a stop sign, where it came to a stop.

The appellant jumped out of this car, took off his black jacket and threw it on the road, and ran away. Officer Celia got out of his car and ran after the appellant. After a two-minute foot chase, the appellant was apprehended and arrested. In a search incident to arrest, two cell phones and $ 711 were found on appellant's person.

In the meantime, Officer Bagley retrieved the stop sticks and drove to the crash area. Upon seeing the jacket in the road, he picked it up and felt something in the pocket. He reached inside and pulled out a large baggie that contained several smaller baggies. The smaller baggies contained a substance later determined to be cocaine. Officer Bagley put the larger baggie back in the pocket and placed the jacket where he had found it on the ground. He secured the area and waited until Officer Celia returned 20 minutes later.

Officer Celia seized the jacket when he returned. He also found inside the jacket a car cell phone charger and an open pack of "Philly Blunts," which he testified are sometimes used to make marijuana cigars. Officer Celia took the large baggie out of the jacket and placed it in his car. Later that day, he took it to the police station where he placed it in an evidence bag and sent it to the Maryland State Police Lab for testing.

Detective Sergeant Robert Kiesel was admitted as an expert in the field of identification, packaging, distribution, evaluation, and use of narcotics. He

2

opined that the 19.9 grams of cocaine found in the baggie had a street value of about $4,000. He noted that the drugs were packaged into six baggies, each containing $20 worth of cocaine: one baggie containing a quarter ounce of cocaine, and one baggie containing a half ounce of cocaine. The detective opined that the amount of drugs, the manner in which they were packaged, the two cell phones, the $711, and the absence of drug use paraphernalia all tended to show that the drugs were not for personal use but for distribution.

The appellant did not have a valid driver's license at the time of his arrest.

Exhibit 2, pp. 1-3 [footnote omitted].[2]

## PROCEDURAL HISTORY

Williams raised two issues on direct appeal before the Court of Special Appeals of Maryland:

> 1. The trial court erred in imposing a sentence of twenty-five years without the possibility of parole; and
>
> 2. The trial court erred in allowing the State to introduce evidence for which a proper chain of custody had not been established.

Exhibit 8, p. 2. *See also* Exhibit 2, p. 1. The Court of Special Appeals affirmed the conviction and sentence by unreported opinion filed on July 25, 2007. Exhibit 2.

On October 5, 2007, Williams filed a pro se pleading in the Court of Special Appeals of Maryland. The pleading was forwarded to the Court of Appeals of Maryland which construed it as a petition for writ of certiorari; however, the pleading did not raise any specific questions for review. Williams supplemented the Petition, raising the same claims that were presented to

---

[2] Williams was also convicted of possession of cocaine, attempting to flee and elude a police officer, two counts of fleeing and eluding a police officer, and one count each of driving on a suspended license and reckless driving. These convictions were either merged into the possession with intent to distribute cocaine conviction or suspended generally. Exhibit 2, p. 2.

the Court of Special Appeals. The Court of Appeals denied certiorari review on December 7, 2007.

## EXHAUSTION

Respondents asserted exhaustion as an affirmative defense in regard to two of the four claims initially raised by Petitioner. Williams was notified that he could move for a stay or withdraw the unexhausted claims and proceed on the exhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005); *see also Rose v. Lundy*, 455 U.S. 509, 519 (1982). Williams subsequently moved to withdraw the unexhausted claims and proceed only with the exhausted claims on federal habeas review. *See* Papers No. 13, 14, and 15.

## CLAIMS PRESENTED

Williams presents two claims on federal habeas review: 1) drug evidence was improperly admitted at trial because the state failed to prove a proper chain of custody; and 2) the trial court imposed an illegal sentence.

## STANDARD OF REVIEW

This petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended, which provides a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7. (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005) (explaining that habeas court's standard for evaluating state court rulings is highly deferential). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or "resulted in a decision that was based on an unreasonable determination of the facts in light of

2) the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Green v. Johnson*, 515 F.3d 290 (4th Cir. 2008).

A state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410. Furthermore, when a state court has made a finding of fact, it is presumed correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254 (e) (1).

## DISCUSSION

A. Claim that Trial Court Erred by Admitting Evidence Without Proper Chain of Custody

Williams asserts that items taken from his jacket were improperly admitted into evidence because the testimony given by the police officers at trial was inconsistent with information on the chain of custody form. Petition, p. 4 Ground One.[3] The Court of Special Appeals rejected this claim on direct appeal, stating:

---

[3] Respondents also assert this claim should be denied because Williams fails to allege abridgement of a specific the constitutional right or federal law. Admissibility rulings will support the grant of habeas relief only when the alleged error infringes upon a specific constitutional right or is so prejudicial that it amounts to the denial

> The appellant next contends that the trial court erred in admitting into evidence the chemist's report stating that the substance found in the baggie was cocaine because the State failed to establish a proper chain of custody for the cocaine. Specifically, he argues that the report failed to reflect that Officer Bagley had "custody" of the cocaine before Officer Celia did. This argument is meritless.
>
> "The law requires a party to establish a 'chain of custody' when offering certain items of evidence, in order to assure that the particular item is in substantially the same condition as it was when it was seized." *Wagner v. State*, 160 Md. App. 531, 552 (2005) (citing *Lester v. State*, 82 Md. App. 391, 394 (1990)). "Establishing a 'chain of custody' as to a certain item provides a means to 'account for its handling from the time it was seized until it is offered in evidence.'" *Id.*
>
> "The circumstances surrounding [the] safekeeping [of the item of evidence during that time] need only" be proven as a reasonable probability …. and in most instances is established… by responsible parties who can negate a possibility of 'tampering' … and thus preclude a likelihood that the thing's condition was changed." *Jones v. State*, 172 Md. 444, 462 (2007) (quoting *Wagner,* supra, 160 Md. App. at 552).

Exhibit 2, pp. 12-13.

The Court of Special Appeals observed that the legislative purpose of the "chain of custody" provision in the Maryland Code, § 10-1002, Court and Judicial Proceedings,[4] is "to

---

of due process. *See Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir.), *cert. denied*, 488 U.S. 928 (1988). "The question of whether or not a chain of custody has been shown is one of state law, and state law questions are not very often the basis of constitutional error under habeas review." *Scott v. Jones*, 915 F.2d 1188, 1189 (8th Cir.1990). The issue is not whether the trial court erred in admitting the evidence, but whether its admission resulted in a trial so fundamentally unfair that Petitioner was denied due process of law. *See Rainer v.Dep't of Corrections*, 914 F.2d 1067, 1072 (8th Cir.1990). Williams presents no evidence to suggest violation of due process. Additionally, Respondents contend this claim is procedurally defaulted.

> [4] The provision reads:
> (a) In this part:
> (1) "Chain of custody" means:
> > (i) The seizing officer;
> > (ii) The packaging officer, if the packaging officer is not also the seizing officer; and
> > (iii) The chemist or other person who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law enforcement agency before or during the analysis of the substance; and
>
> (2) "Chain of custody" does not include a person who handled the substance in any form after analysis of the substance.

provide a shortcut for the State, to relieve it of the burden of having to bring into court each person in the chain of custody in order to prove chain of custody." Exhibit 2, p. 14.

The Court of Special Appeals rejected Williams' argument that omission of Officer Bagley's name on the chain of custody report rendered the chain of custody deficient. *See id.* pp. 14-15. Officer Bagley was not the "seizing officer" of the cocaine within the meaning of the statute, and was therefore not obligated to sign the report. *See id.* The court explained:

> The evidence elicited at trial was sufficient to show by a standard of reasonable probability that the cocaine seized from the appellant's coat pocket was not tampered with and was substantially the same as when it was collected by Officer Celia. Officers Bagley and Celia explained how the baggie was handled prior to its being placed in an evidence bag and sent to the Maryland State Police Lab. Nothing about Officer Bagley's involvement was indicative of tampering or contamination.

Exhibit 2, p. 15.

The trial transcripts support the state court's findings. At trial, Officer Bagley testified that he secured the scene, picked up the abandoned jacket, felt inside the pockets, and saw the bag of suspected contraband. Exhibit 5, pp. 88-89. He then replaced the jacket on the ground and kept it under watch until Officer Celia returned from chasing Williams. *See id.*

---

(b)(1) For the purpose of establishing, in a criminal or civil proceeding, the chain of physical custody or control of evidence consisting of or containing a substance tested or analyzed to determine whether it is a controlled dangerous substance under Title 5 of the Criminal Law Article, a statement signed by each successive person in the chain of custody that the person delivered it to the other person indicated on or about the date stated is prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement.
(2) The statement shall contain a sufficient description of the material or its container so as to distinguish it as the particular item in question and shall state that the material was delivered in essentially the same condition as received.
(3) The statement may be placed on the same document as the report provided for in § 10-1001 of this part.
(4) Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumption raised by the statement.

Md. Code, Courts and Judicial Proceedings, § 10-1002 (2002 Repl. Vol.)

Williams fails to rebut the presumption of correctness accorded the state court's findings-of-fact. Under the deferential standard of review in § 2254 proceedings, relief may not be granted on a claim adjudicated on the merits unless it resulted in a decision based on an unreasonable determination of the facts. The state court's decision is reasonable and supported by the record.

Further, Williams fails to show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d), and the state court ruling is consistent with federal precedent on this issue. *See, e.g, United States v. Howard-Arias*, 679 F.2d 363 (4th Cir.1982) (ruling that establishment of a formal chain of custody of evidence is not required; it is sufficient for the party offering the evidence to satisfy the trial court that the item is what it purports to be and has not been altered); *United States v. Ricco*, 52 F.3d 58, 61-62 (4th Cir.1992) ("a missing link" does not prevent admission of evidence if there is sufficient proof evidence is what it purports to be and has not been materially altered). Notably, Williams proffers no evidence of tampering, alteration, or that the contraband was anything other than what it was purported to be at trial. For these reasons, the claim provides no grounds for federal habeas corpus relief.

B.  Claim of Illegal Sentence

William asserts that his sentence is illegal because he was improperly considered a three-time offender. Petition, Ground Three. William had previously pleaded guilty to two possession with intent to distribute offenses. Exhibit. 7, p. 5.

The first issue presented is whether Williams raises a claim cognizable on federal habeas corpus review. In order to be entitled to federal habeas corpus relief, a petitioner must demonstrate that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also, Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Wainwright v. Goode*, 464 U.S. 78, 83 (1983). Violations of state law which do not infringe on specific federal constitutional protections are not cognizable under § 2254.  *See* 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Weeks v. Angeleone,* 176 F.3d 249, 262 (4th Cir. 1999) ("when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review").

Williams claims in a footnote that his mandatory minimum sentence violated his constitutional right to trial by jury.  To the extent Williams might intend to raise a claim under *Apprendi v New Jersey*, 530 U.S. 466, 490 (2000) and its progeny, the Constitution's jury trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence *above* the statutory maximum based on a fact, *other than a prior conviction*, not found or admitted by the defendant, circumstances that are not presented in this case. (Emphasis added.).[5]

The Court of Special Appeals of Maryland rejected Williams' claim of improper sentence as follows:

> The appellant contends that the trial court erred in sentencing him to a mandatory term of 25 years imprisonment without the possibility of parole as a third-time offender on his possession of cocaine with the intent to distribute conviction. *See* Md. Code (2002), section 5-608(c) of the Criminal Law Article ("CL").  We find no error.

---

[5] Respondents argue that to the extent Williams intended to raise a Sixth Amendment claim, it is procedurally defaulted due to failure to raise it before the state courts.

On May 13, 2005, the State served on defense counsel, pursuant to Rule 4-245(c), notice of its intent to seek an enhanced sentenced as a subsequent offender under CL section 5-608(c).

At sentencing, the prosecutor advised the court that it was seeking a mandatory 25-year period of incarceration on the ground that the appellant was a three-time offender. The prosecutor explained that two years earlier, on February 5, 2003,[6] the appellant, pursuant to a guilty plea, was sentenced on two charges of possession with intent to distribute; the charges had arisen on separate dates and separate occasions.

Defense counsel conceded that the appellant was "eligible to be treated as a third time offender for the current case" but argued that the court was "equitably stopped" from doing so. Specifically, defense counsel maintained that the following remarks made by the earlier sentencing court after it had imposed sentence on the two prior convictions precluded the court from treating the appellant as a third-time offender:

> The other thing I got to tell you is that the laws of the State of Maryland, give judges a lot of discretion for first-timers. And even though you had all these charges this is the first time in court. We have very little discretion for second-timers. I don't know if you and [defense counsel] have talked about this, the second time through it is mandatory 10 years with no parole. That is a heavy sentence. You are doing one fourth your time now so if you want to look at it a 10 year no parole is almost like a 40 year sentence. So you got to do one fourth of it. So I mean that would really break your back. It wouldn't be much left after 10 years. So I say that to you as a warning; okay.

The court rejected defense counsel's argument and sentenced the appellant as a third-time offender. In doing so, it ruled:

> Okay. I do not find the equitable estoppels [sic] argument persuasive. [The appellant] is the owner of his fate. It is his actions that have brought him in this position that he is, and I…absent any case law to the contrary, I do not believe that in any way the State is…or, this Court is estopped from treating him as a third time offender, if the requirements have been met. And, it has been conceded that they have been met, such that he may be treated as a third time offender standing here today.

---

[6] The opinion contains a typographic error. Williams pleaded guilty to the offenses on February 5, 2002. *See* Circuit Court for Charles County, Crim. Cases No. 08K01000839 and 08K01000948. *See* Exhibit 7, p. 5. *See also* Maryland Judiciary website: http://casesearch.courts.state.md.us .

>  (Ellipses in original)
>
>   The appellant's arguments in this Court follow two lines of attack. His first attack focuses on the prior sentencing court's actions. He argues that the "court's decision to proceed on both cases at the same time, accept a plea, and impose concurrent sentences, constituted a *de facto* merger of the two related convictions for enhanced penalty purposes." He states that "once the court combined [his] offenses for purposes of the subsequent offender scheme, the conviction could not subsequently be split and used as the basis for an enhancement of sentence." He also argues that, in light of the prior sentencing court's admonishment and warning, treating him as a third-time offender is "fundamentally unfair," citing, with little supportive argument or case law, the principles of equitable estoppel and "the law of the case."
>
>   The appellant's second line of attack focuses on his two prior convictions. He argues that he should not have been sentenced as a third-time offender because he "never had the opportunity to be sentenced as a second-time offender before he was sentenced to the extreme penalty provision of the three-time offender statute." He argues that "[t]here was simply no opportunity to reform between his first and second convictions, which were tried and sentenced together" and his present conviction. He maintains that to sentence him as a third-time offender defeats the purpose of the statute which is to encourage rehabilitation.

Exhibit 2, pp. 4-6.

After reviewing the mandatory sentencing provisions for drug offenders set forth in § 6-608(c) of the Criminal Law Article of the Maryland Code (2002), the Court of Special Appeals concluded:

>   First, and contrary to the appellant's argument, there was no merger of Williams' two prior convictions. This is not a case in which the prior offenses arose out of the same conduct or were related in any way. Here, the two prior convictions were for two separate crimes—occurring on two separate dates. The appellant was sentenced for the two crimes at the same hearing, but that does not work a *de facto* merger of the crimes for sentencing purposes.

The court noted that Williams cited no case law binding a court to a certain sentence based on remarks made by a sentencing court at a prior unrelated proceeding, and found the

11

doctrines of equitable estoppel and the law of the case did not apply.[7] Exhibit 2, pp. 8-9.

Turning to the statute, the court observed :

> …[T]he plain language of CL section 5-608 in no way requires that the sentences for the predicate offenses be handed down on different days. In addition, the plain language of CL section 5-608 in no way requires that before sentencing a person as a third-time offender he/she must have received a sentence as a second-time offender. To read the statute as the appellant would have us read it would require adding language and improperly construing the statute with a forced interpretation not evidenced by its unambiguous language. [citation omitted]. What the statute does require is that the prior convictions arise from "separate occasions," which the statute clearly defines as "one in which the second or succeeding crime is committed after there has been a charging document filed for the proceeding crime." CL § 5-608(c)(4). Moreover, the statute requires that the defendant have served "at least one term of confinement of at least 180 days in a correctional institution as a result" of the prior confinement. The appellant does not argue that those requirements were not met.

Exhibit 2, p. 9-10.[8]

The state court decision that found no error by the sentencing court in sentencing Williams as a third-time offender was not contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or involved an unreasonable determination of facts. The record shows that Williams entered guilty pleas to possession with intent to distribute in two prior and separate cases. The charges arose from incidents on different dates, which, according to defense counsel, occurred about one-and-a-half months apart. Exhibit 6, p. 5. The cases went

---

[7] The court explained in a footnote:
The doctrine of equitable estoppel is a civil concept generally not applicable in criminal proceedings. [citation omitted]. Under the "law of the case" doctrine, when an "appellate court has rendered a decision and states in its opinion a rule of law necessary to [its] decision, that rule is to be followed in all subsequent proceedings in the same action." BLACKS LAW DICTIONARY 798 (5TH ED. 1979). The appellant fails to cite any Maryland decision discussing the law of the case. Even if the doctrine were applicable, the remarks by the prior sentencing court were not necessary to its decision.
Exhibit 2, p. 9, n. 3.

[8] The prosecutor had requested a sentence at the high end of the guidelines, noting that Williams had served four years, was paroled, and violated parole by committing the same offense. Paper No. 7, p. 10.

before the court on the same day for plea and sentencing. *See id*. In fact, Williams' defense counsel acknowledge to the sentencing court "No, there's no question that we concede that he was charged in the two separate cases; that the charges arose on separate dates…separate occasions…." *Id*. p. 6. This claim provides no basis for federal habeas corpus relief.

## CONCLUSION

For reasons stated herein, the court determines that the claims presented do not warrant issuance of federal habeas corpus relief. The Petition will be denied by separate Order.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability (COA) must issue before Petitioner can appeal the court's decision. *See* 28 U.S.C. § 2253(c) (1) and Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282, (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36, (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983). In cases where the district court dismisses a habeas petition solely on procedural grounds, a Certificate of Appealability will not issue unless a petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack*, 529 U.S. at 484 (2000)).

Petitioner has not made the requisite showing. There is no basis to grant a Certificate of Appealability. Denial of a Certificate of Appealability does not prevent Petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission

Date: __November 17, 2009__             _____/s/_____
                                              DEBORAH K. CHASANOW
                                              United States District Judge